UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST ADMINISTRATORS, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. C06-400-JPD |
| ) | |
| v. ) | |
| ) | ORDER GRANTING PLAINTIFF'S |
| MIDLAND TRUCKING, a division of ) | MOTION FOR SUMMARY |
| JIMCO, INC., a Washington Corporation, ) | JUDGMENT |
| ) | |
| Defendant. ) | |
| _____ ) | |

## I.   INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff, Northwest Administrators, Inc., brings this action to compel defendant,

Midland Transportation, Inc., to submit to an audit of certain employee tax and payroll

records in connection with its administration of a trust fund that provided health and welfare

benefits for defendant's employees.[1]  This matter comes before the Court upon plaintiff's

motion for summary judgment.  Dkt. No. 7.  Defendant opposes the motion.  Dkt. No. 11.

Having carefully considered the parties' papers, supporting materials, and the balance of the

record, the Court GRANTS plaintiff's motion for summary judgment.  Dkt. No. 7.  Further,

_____

[1]The docket and pleadings refer to defendant as "Midland Trucking," but the documents
involved in this case refer to defendant as "Midland Transportation, Inc."

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PAGE -1

01 the Court GRANTS plaintiff's request for attorney's fees in the amount of $6,029.25.

02 ## II.  FACTS AND PROCEDURAL HISTORY

03 The relevant facts of this case are brief and are not disputed by the parties.  *See* Dkt.

04 No. 11 at 2.  On May 18, 1988, certain labor unions and employers executed the Washington

05 Teamsters Welfare Trust Agreement and Declaration of Trust ("Trust Agreement").  Dkt.

06 No. 8, Ex. A.[2]  The Trust Agreement created the Washington Teamsters Welfare Trust Fund

07 ("Trust Fund" or "Trust"), which provides certain life, accident, and health insurance for the

08 employees of employers who contribute to the Trust Fund.  *Id.* at art. III.  The Trust Fund is

09 governed by a board of trustees ("Trustees").  *Id.* at art. II.  Employers bound by a collective

10 bargaining agreement are required to contribute to the Trust Fund.  *Id.* at art. IV.

11 On June 8, 2001, defendant and Teamsters Local 760 ("Local 760") entered into a

12 Collective Bargaining Agreement ("CBA") that remained in effect from July 1, 2000, to

13 June 30, 2004.[3]  Ex. B at art. 10.  On June 8, 2001, Local 760 and defendant also signed the

14 Washington Teamsters Welfare Trust Subscription Agreement ("Subscription Agreement").

15 Ex. C.  The Subscription Agreement bound defendant to the terms of the Trust Agreement

16 and provided that the Trustees retained "the sole discretion and authority to interpret the

17 terms of the Trust's benefit plans, the plans' eligibility requirements, and other matters related

18 to the administration and operation of the Trust and its benefit plans."  *Id.*  On June 20, 2001,

19 

---

20 
21 [2]Unless otherwise noted, all subsequent citations to the record are to Dkt. No. 8 and make reference only to the appropriate exhibit number.

22 [3]Among other things, the CBA required defendant to make certain contributions to the Trust Fund or to provide comparable benefits through alternative programs.  Ex. C at art. 5.
23 The CBA required defendant to continue to pay into the Trust Fund in the "same amount and manner as required in the [CBA] until" a subsequent CBA is reached or the employer gives
24 notice that it intends to "cancel its obligation."  *Id.*  Similarly, the Subscription Agreement and Special Agreement were to remain in effect during the term of the CBA.  Exs. D and E.  The
25 parties do not dispute that defendant was bound to its payment obligations to the Trust Fund
26 through May 31, 2005.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PAGE -2

01 defendant signed a Special Agreement - Non-Bargaining Unit Employees ("Special

02 Agreement") in which it agreed to contribute to the Trust Fund for the benefit of all

03 employees not covered by the CBA.  Ex. D.

04      In May 2005, defendant notified the Trust Fund that it would terminate its obligations

05 under the Trust Agreement and transfer its benefits to another fund effective May 31, 2005.

06 Dkt. No. 8 at ¶ 20.  In a letter dated February 21, 2006, plaintiff notified defendant that it

07 would conduct a close-out audit of defendant's contributions for the period of January 1,

08 2002, to May 31, 2005, ("Relevant Period") in order to verify that defendant had fulfilled its

09 contribution obligations.  Ex. E.  The letter requested that defendant provide certain employee

10 tax and payroll records to facilitate the audit.  *Id.*  In a letter dated March 2, 2006, however,

11 defendant, through counsel, refused to submit to the audit.  Ex. F.  It argued that it had no

12 obligation to do so because the request had been made after the termination of its obligation

13 to the Trust.  Ex. F.

14      On March 9, 2006, plaintiff, though its attorneys, sent defendant a second written

15 request for the audit.  Ex. G.  The letter cited to particular portions of the Trust Agreement

16 and requested that the documents be produced no later than March 20, 2006.  *Id.*  Defendant

17 did not produce the documents.  On March 21, 2006, plaintiff filed this action to compel

18 defendant to submit to the audit.  Dkt. No. 1.

19      Plaintiff has moved for summary judgment.  Dkt. No. 7.  Plaintiff argues that the Trust

20 Agreement requires defendant to submit to the audit for the Relevant Period, even though the

21 request was made after defendant terminated its obligations under the Trust Agreement.  *Id.* at

22 8-14.  Plaintiff also moves the Court to award attorney's fees.  *Id.* at 15-17.          Defendant

23 opposes the motion for summary judgment.  Dkt. No. 11.  Defendant argues that plaintiff's

24 request for records relating to all of its employees is overbroad and that issues of fact exist as

25 to what employees are covered.  *Id.* at 3-8.  Defendant also argues that it has no obligation to

26 produce the requested documents because the request was made after it terminated its

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PAGE -3

01  participation in the Trust.  *Id.* at 8-10.  It also argues that plaintiff's requests were not made

02  for the "proper administration" of the Trust.  *Id.*  Although defendant argues that attorney's

03  fees and costs should not be awarded, it provides no substantive argument on this issue.

### III.  JURISDICTION

05  The Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1132(e)(1) and (f)

06  (1974).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to have this matter heard

07  by the undersigned United States Magistrate Judge.  Dkt. No. 21. Venue is proper because

08  the subject Trust Fund is administered in the Western District of Washington.  29 U.S.C. §

09  1132(e)(2).

### IV.  ANALYSIS

11  A.    <u>Summary Judgment Standard</u>.

12  Summary judgment is appropriate, when viewing the evidence in the light most

13  favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such

14  that "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A

15  material fact is a fact relevant to the outcome of the pending action.  *See Anderson v. Liberty*

16  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Genuine issues of material fact exist when the

17  evidence would enable "a reasonable jury . . . [to] return a verdict for the nonmoving party."

18  *Id.*  In response to a summary-judgment motion that is properly supported, the nonmoving

19  party may not rest upon mere allegations or denials in the pleadings, but must set forth

20  specific facts demonstrating a genuine issue of fact for trial, and produce evidence sufficient to

21  establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e); *Celotex*

22  *Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  A mere scintilla of evidence, however, is

23  insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.  To defeat a motion

24  for summary judgment, the non-moving party must make more than conclusory allegations,

25  speculations, or argumentative assertions that material facts are in dispute.  *T.W. Elec.*

26  *Service, Inc. v. Pacific Elec. Contractors Ass'n*,  809 F.2d 626, 630-32 (9th Cir. 1987).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PAGE -4

01        B.    <u>Plaintiff Has Authority to Audit Defendant For The Period Defendant Was</u>
02                   <u>Covered by the Trust</u>.

03        A trust for health or pension benefits is a contract governed by the Employee

04  Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended

05  (1988).  ERISA requires that the assets of employee benefit plans be held in trust pursuant to

06  a written trust agreement.  *Id.* at §§ 1102(a), 1103(a).  The language of a trust agreement

07  defines the rights and obligations of the parties to the trust to the extent they are consistent

08  with ERISA.  *Id.* at § 1145;  *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*,

09  920 F.2d 1491, 1493-94 (9th Cir. 1990) (internal citations omitted).

10        Article IX, Section 1 of the Trust Agreement provides:

11          Each Employer shall promptly furnish to the Trustees on demand any and all
        records of his Employees, concerning the classification of such employees,
12          their names, Social Security numbers, amount of wages paid and hours worked
        and *any other payroll records and information that the Trustees may require*
13          *in connection with the administration of the Trust Fund.* . . . The Trustees or
        their authorized representatives may examine the payroll books and records of
14          each Employer *whenever such examination is deemed necessary or advisable*
        *by the Trustees in connection with the proper administration of the Trust*
15          *Fund.*

16   Ex. A (emphasis added).  Further, the Subscription Agreement provides that the Trustees

17  "retain the sole discretion and authority to interpret the terms of the Trust's benefit plans, the

18  plans' eligibility requirements, and other matters related to the administration and operation of

19  the Trust and its benefit plans."  Ex. C.  Hence, pursuant to the plain terms of the Trust

20  Agreement and Subscription Agreement, the Trustees enjoy broad audit rights in order to

21  ensure that employers fulfill their contribution obligations to the Trust.  These broad audit

22  rights are not uncommon and are consistent with the common law rights of trustees and the

23  terms of ERISA.  *Central States, Southeast & Southwest Areas Pension Fund v. Central*

24  *Transp., Inc.*, 472 U.S. 559, 571-74 (1985) (*Central States II*); Dkt. No. 8 at ¶ 19.

25        Defendant argues that it is not retroactively required to submit to the audit because it

26  had terminated its obligations to the Trust effective May 31, 2005.  Dkt. No. 11 at 8-10.  The

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PAGE -5

01  plain language of the Trust Agreement, however, belies this assertion.  The Trust Agreement

02  explicitly empowers the Trustees to examine defendant's records "*whenever* such examination

03  is deemed necessary or advisable by the Trustees in connection with the proper administration

04  of the Trust Fund."  Ex. A at art. IX, § 1 (emphasis added).  The Trustees have determined

05  that such an audit is appropriate in this case to ensure that defendant fulfilled its contribution

06  obligations during the Relevant Period.  Dkt. No. 8 at. ¶ 20.  Hence, Trust Agreement

07  explicitly provides the trustees with the authority to request the audit in this context.

08      There is persuasive authority in the Ninth Circuit that supports this conclusion.  For

09  instance, in *Building Service Employees Pension Trust v. Horsemen's Quarter Horse Racing*

10  *Ass'n*, 609 F. Supp. 1075, 1080 (N.D. Cal. 1985), a union trust fund brought suit to compel

11  defendant employers to produce certain employment and payroll records to ensure proper

12  compliance with the trust.  The defendant employer argued that it was not obligated to

13  comply with the request because its contractual obligations to the trust had expired with the

14  parties' collective bargaining agreement.  *Id*. at 1079.  The court, however, concluded that the

15  plain language of the relevant trust instrument required defendant to disclose the documents.

16  *Id*. at 1080.

17      In this case, the Trust Agreement provides broad rights to compel an audit of relevant

18  records.  Like the Trust Agreement, the agreement in *Building Service* provided for broad

19  audit rights to ensure compliance.  The relevant section provided that "[t]he Pension Plan

20  Trustees may require of any Employer . . . any reasonable information, data and documents

21  relevant and suitable for the purposes of the administration of the Trust and Pension Plan."

22  *Building Service*, 609 F. Supp. at 1078.  Even more compelling, plaintiffs in this case have the

23  "sole authority" to interpret the scope of those rights under the Subscription Agreement.

24  Although the Ninth Circuit has not had an opportunity to address this issue, *Building Service*

25  has been cited with approval in at least one other federal court.  *See Rudd v. Baker Furniture*,

26  967 F. Supp. 984, 988 (M.D. Tenn. 1997) (directing retroactive audit after expiration of

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PAGE -6

01  collective bargaining agreement incorporating trust agreement).  Defendant points to no

02  authority that compels a contrary result.[4]

03      Defendant's assertion that summary judgment should be denied because an issue of

04  fact exists regarding whether plaintiff's audit request was not made for the "proper

05  administration" of the Trust is without merit.  Termination audits such as the one sought here

06  are routine.  Dkt. No. 8 at ¶ 19.  Moreover, previous audits of defendant in connection with

07  the Trust Fund have been made in accordance with the terms of the Trust Agreement and

08  applicable regulations.  Dkt. No. 18 at ¶¶ 5-8.  Audit requests that include information relating

09  to covered and non-covered employees are within the broad rights of the Trustees, and

10  Trustees generally.  Ex. A at art. IX, § 1 (providing that the trustees may request "any other

11  payroll records and information" required in connection with the administration of the Trust

12  Fund); *Central States II*, 472 U.S. 559, 572-74 (noting that trustees have a duty to investigate

13  and determine the identities of trust beneficiaries).  Defendant's conclusory allegations to the

14  contrary are insufficient to defeat plaintiff's motion.  *T.W. Elec. Service, Inc.,* 809 F.2d at

15  630-32.

16      C.      The Scope of Plaintiff's Request is Not Overly Broad.

17      Defendant argues that it need not comply with plaintiff's audit because the request is

18  "overly broad."  Dkt. No. 11 at 3-8.  It argues that it is not obligated to comply with the

19  request because the audit requires a review of records involving employees allegedly not

20  covered by the CBA.  The authorities relied upon by defendant for this proposition, however,

21  are either inapposite, inaccurately cited, or unpersuasive.

22      For instance, defendant cites *Central States, Southeast & Southwest Areas Pension*

23  _____

24      [4]Defendant cites *Boggs v. Boggs*, 520 U.S. 893, 839 (1997), but only for the
25  proposition that the purpose of ERISA is to ensure the proper administration of employee
    pension plans for the benefits of employees and beneficiaries.  Dkt. No. 11 at 8-9.  *Boggs* sheds
26  no light on defendant's argument regarding post-CBA expiration audits.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PAGE -7

01  *Fund v. Central Transp., Inc.*, 698 F.2d 802 (6th Cir. 1982) (*Central States I*), for the

02  proposition that broad requests for records that include both covered and non-covered

03  employees are not enforceable, unless the party seeking the audit shows reasonable cause.

04  Dkt. No. 11 at 6. That case, however, was reversed by the Supreme Court in *Central States

05  II*. 472 U.S. at 564. In *Central States II*, the Supreme Court specifically noted that trustees

06  have an obligation to investigate and determine the identities of trust beneficiaries and that

07  such audit requests are consistent with that duty and the purposes of ERISA. *Id*. at 572-74.

08      Defendant relies upon *Building Service* and *Central States, Southeast and Southwest

09  Areas Pension Fund v. CRST, Inc.*, 641 F.2d 616 (8th Cir. 1981) (en banc), *overruled on

10  other grounds by Robbins v. Prosser's Moving and Storage Co.*, 700 F.2d 802 (8th Cir.

11  1983), for the same proposition. Dkt. No. 11 at 6-7. As discussed above, the Court in

12  *Building Service* actually directed that the disclosure of the requested documents be made.[5]

13  Although the court in *CRST* did find that a request for documents containing information

14  relating to covered and non-covered employees was overbroad, that case was decided before

15  *Central States II* and is, in any case, not binding on this Court.

16      The defendant offers no binding or persuasive authority that compels this Court to

17  conclude that plaintiff lacks the authority to compel the requested audit. Accordingly, plaintiff

18  is entitled to summary judgment in its favor.

19      D.    Plaintiff is Entitled to Attorney's Fees.

20      Plaintiff argues that the Court should direct an award of reasonable attorney's fees and

21  costs. Dkt. No. 7 at 15-18. It has offered the declaration of Thomas A. Leahy in support of

22  the request, which indicates plaintiff's counsel has incurred fees and costs in the total amount

23

24      _____

        [5]*Building Service* distinguished *Central States I* and *CRST* by noting that the funds in

25  those cases "sought records of employees who were never covered" by the applicable
        agreements. 609 F. Supp at 1080. Although defendant appears to be arguing that is the case

26  here, all of those cases were decided prior to *Central States II*.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PAGE -8

01 of $6,029.25. Dkt. No. 19. Defendant opposes the request, but offers no substantive

02 arguments as to why it should be denied. Dkt. No. 11 at 2.

03      ERISA empowers the Court, "in its discretion," to grant a "reasonable attorney's fee

04 and costs of action to either party." 29 U.S.C. § 1132(g)(1). To determine whether an award

05 is appropriate, the Court must consider the following factors:

06      (1) the degree of the opposing parties' culpability or bad faith; (2) the ability
of the opposing party to satisfy an award of fees; (3) whether an award of fees

07      against the opposing party would deter others from acting under similar
circumstances; (4) whether the parties requesting fees sought to benefit all participants and

08 beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and
(5) the relative merits of the parties' positions.

09

10  *Miramar Hotel Corp.*, 920 F.2d at 1495 (citing *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446,

11 453 (9th Cir.1980). A court need not find that all five factors weigh in favor of the movant in

12 order to direct an award attorney's fees. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173

13 (9th Cir. 1999).

14      In this case, the balance of *Hummell* factors tips sharply in favor of granting plaintiff's

15 motion for attorney's fees. Although both parties suggest that the other is acting in bad faith,

16 there is no specific evidence of such behavior by either party. There is no evidence in the

17 record as to defendant's ability to satisfy an attorney's fee award. The defendant did not

18 address this issue in its response. The third *Hummell* factor is not particularly helpful; the

19 Court can only speculate as to whether an award in this case would discourage future litigants

20 from asserting the same arguments.

21      The fourth and fifth *Hummell* factors weigh heavily in plaintiff's favor. Plaintiff

22 requested the audit at issue to ensure defendant had properly complied with its obligations

23 under the Trust Agreement and other documents. The audit was thus requested for the

24 benefit of the Trust Fund's participant's and beneficiaries. Finally, the Court finds the fifth

25 *Hummell* factor particularly persuasive. The strength of the plaintiff's position on the merits

26 suggests an award of attorney's fees is appropriate in this case.

### V. CONCLUSION

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PAGE -9

01        For the reasons discussed above, the Court GRANTS plaintiff's motion for summary

02   judgment.  Dkt. No. 7.  Defendant is directed to submit to the requested audit.  In addition,

03   the Court GRANTS plaintiff's request for attorney's fees and costs in the amount of

04   $6,029.25.

05        DATED this 31st day of July, 2006.

06                                                    _____

07                                                    JAMES P. DONOHUE
                                                      United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PAGE -10